AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

### DISTRICT OF   MASSACHUSETTS

UNITED STATES OF AMERICA

**V.**

ADAILTON F. FERREIRA A/K/A
"MARC" A/K/A "RAFAEL"

(Name and Address of Defendant)

# CRIMINAL COMPLAINT

CASE NUMBER: *MJ03-m-26 073LA*

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about November of 2003  September of 2003 through  in  Middlesex  county, in the District of  Massachusetts  defendant(s) did, (Track Statutory Language of Offense)

knowingly and without lawful authority transfer false identification documents

in violation of Title  18  United States Code, Section(s)  1028 .

I further state that I am a(n)  Special Agent  and that this complaint is based on the following

Official Title

facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

12/22/03
Date

at  BOSTON, MASSACHUSETTS
City and State

JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE

Name & Title of Judicial Officer

_____
Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF SPECIAL AGENT DANA FIANDACA

I, Dana Fiandaca, having been duly sworn, do hereby depos
and state as follows:

1.  I am a Special Agent with United States Immigration a d
Customs Enforcement ("ICE"), formerly the United States
Immigration and Naturalization Service ("INS"), and have been  o
employed since June 1996. Among other duties, I am assigned to
investigate the manufacture and sale of fraudulent Immigration
and Naturalization Resident Alien cards, Form I-551 (hereinaft r
"green cards"). From my training, I know that persons, usually
aliens, manufacture and distribute counterfeit resident alien
cards, social security account number cards (hereinafter "SSAN ")
and other false documentation. The counterfeit documents are t en
sold to aliens who are illegally in the United States or who d
not have permission to work in the United States. I am familia
with the various criminal statutes pertaining to the enforceme t
of immigration laws and which make it unlawful to manufacture  nd
sell green cards, including Title 18, United States Code,
§1546(a) (immigration document fraud); Title 18, United States
Code, §1028(a) (1)-(6) (producing identification and false
identification documents) and Title 18, United States Code,
§1426(b) (using and selling false naturalization, citizenship  nd
registry documents).

2.    This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and agents of this service, as well as information provided to me by a Confidential Informant ("CI"). This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation, but is submitted in support of a criminal complaint against **Adailton F. FERREIRA ("FERREIRA") a/k/a "Marc" a/k/a "Rafael"**, charging him with a violation 18 U.S.C. §1028(a)(2)(knowingly transferring false identification documents).

**BACKGROUND**

3.    In August 2003, I received information from an ICE confidential informant MIR# 01903 (hereinafter "CI#1") regarding a Hispanic male using the name of "Marc", selling fraudulent green cards and social security cards in the Somerville, Massachusetts area. CI#1 has been a source of information for ICE in excess of one year. CI#1 has previously furnished information to law enforcement, which I have verified to be reliable and accurate in fraudulent document investigations.

4.    According to CI#1, "Marc", who was later identified as **FERREIRA**, sold the documents to illegal aliens present in the United States. **FERREIRA** charged approximately $140.00 for a set, which contains a green card and social security card. CI#1

2

provided me with a cellular phone number (617) 953-6691 as the way to contact **FERREIRA** to order the documents.

5.   On August 19, 2003, CI#1 placed a call to **FERREIRA** at the aforementioned cellular telephone number for the purpose of ordering fraudulent documents. Using a pretext, CI#1 inquired of **FERREIRA** about obtaining a set of fraudulent documents. According to CI#1, **FERREIRA** agreed to provide CI#1 with the requested fraudulent documents and quoted the CI#1 a price of $140.00 for the set. During the call, **FERREIRA** requested to meet CI#1 immediately to take the order. CI#1 declined and terminated the call.

### THE DOCUMENT PURCHASES

### FIRST PURCHASE

6.   On September 17, 2003, at the request of your affiant a second ICE confidential informant MIR# 00760 (hereinafter "CI# ) placed a consensually monitored and recorded call to **FERREIRA** t (617) 953-6691 to arrange a meeting to purchase one set of fraudulent documents.  According to CI#2, **FERREIRA** agreed to accommodate his/her request. As a result of the call, a meetin was scheduled for September 18, 2003 between 11:00 a.m. and 12 00 p.m. at the Burlington Mall parking lot (near Sears) in Burlington, Massachusetts. The call was then terminated.

7.   On September 18, 2003, at approximately 9:30 a.m., ICE agents met with CI#2 in Burlington, MA to prepare for the

3

scheduled meeting with **FERREIRA**. Prior to the meeting, an integrity search of CI#2 and CI#2's vehicle was performed by ICE agents. In addition, your affiant provided CI#2 with the green card style photo, which was to be given to **FERREIRA** and used on the documents. CI#2 provided the fictitious name and date of birth and recorded it on the back of the photo. Lastly, an electronic transmitter and recorder were placed on CI#2 to monitor and record the meeting.

8. At approximately 10:49 a.m., CI#2 was observed by ICE agents arriving in the Burlington Mall parking lot and parking in close proximity to the Sears Department Store. CI#2 was escorted to the meet location by ICE agents.

9. At approximately 11:05 a.m., **FERREIRA**, along with another unknown Hispanic male passenger, was observed arriving in the Burlington Mall parking lot in a blue Ford Explorer, bearing Massachusetts Registration 5210 TA. **FERREIRA** proceeded directly to CI#2 and parked next to CI#2's vehicle. According to CI#2, **FERREIRA** introduced himself as "Marc". During the meeting, CI#2 handed **FERREIRA** the green card style photo along with the fictitious name and date of birth. CI#2 inquired if the documents would be completed and ready for delivery within two hours. According to CI#2, **FERREIRA** stated that he would do his best. After a brief conversation, CI#2 informed **FERREIRA** that he/she would call him later to check on the status of the documents. The

4

meeting was then terminated at approximately 11:07 a.m., with CI#2 and **FERREIRA** departing in separate directions.

10.   At approximately 12:50 p.m., ICE agents met with CI#2 in Burlington, MA to prepare for the scheduled delivery of the documents by **FERREIRA.** At approximately the same time, CI#2 received an incoming call from **FERREIRA** who stated that the documents were completed and ready for delivery. According to CI#2, **FERREIRA** requested to change the meet location to the Somerville, Massachusetts area. Using a pretext, CI#2 declined and suggested the two meet at the same place at the Burlington mall. **FERREIRA** agreed, and terminated the call. During the briefing, ICE agents performed an integrity search of CI#2 and CI#2"s vehicle. In addition, CI#2 was provided with the $140.0 of official funds as the fee for the documents.  Lastly, ICE agents placed an electronic transmitter and recorder on CI#2 to monitor and record the meeting.

11.   At approximately 12:59 p.m., CI#2 was observed entering the Burlington Mall parking lot and parking next to the Sears Department store. CI#2 was escorted to the parking lot by ICE agents. At approximately the same time, ICE agents observed **FERREIRA** enter the mall parking lot in the aforementioned Explorer and proceed directly to CI#2's vehicle and park beside it.

12.   During the meeting, CI#2 handed **FERREIRA** the $140.00 as the fee for the documents. According to CI#2, **FERREIRA** informe him/her that the fee for the documents was $150.00 and not $140.00. CI#2 agreed, and provided **FERREIRA** with the additiona $10.00. In exchange, **FERREIRA** handed CI#2 the completed documents. Using a pretext, CI#2 asked **FERREIRA** about bringing additional orders in the future. According to CI#2, **FERREIRA** agreed to accommodate CI#2's future document orders, and state that he would lower the price from $150.00 to between $130.00 o $120.00. CI#2 agreed, and terminated the meeting at approximat ly 1:02 p.m.

13.   Shortly after the meeting, ICE agents met with CI#2 or debriefing, and to take custody of the documents. The name on he documents purchased from **FERREIRA** is Luiza M. SOUZA.   Further examination of the documents also revealed that the photo whic appeared on the fraudulent green card was the same photo your affiant provided to CI#2 earlier.

**SECOND PURCHASE**

14.   On October 14, 2003, at approximately 10:53 a.m., IC agents met with CI#2 for the purpose of making a consensually monitored and recorded call to **FERREIRA.** Using a pretext, CI#2 made contact with **FERREIRA** at cellular number (617) 953-6691. **FERREIRA** advised CI#2 that he would call CI#2 back from a bett r

6

phone. CI#2 agreed, and terminated the call. Approximately two minutes later, CI#2 received a call from **FERREIRA** who was now calling from (857) 222-1709 (number appeared on caller ID). According to CI#2, **FERREIRA** advised him/her to call him (**FERREIRA**) at this new number in the future, because the older cellular number was going to be disconnected. CI#2 agreed, and during the call, placed an order for two sets of fraudulent green cards and social security cards. According to CI#2, **FERREIRA** agreed to accommodate his/her request, and suggested the two meet immediately so that **FERREIRA** could take the photos. CI#2 declined, and suggested the two meet on October 15th at approximately 10:00am at the same spot in the Burlington Mall. **FERREIRA** agreed, and terminated the call.

15.    On October 15, 2003, at approximately 9:30 a.m., ICE agents met with CI#2 to prepare for the scheduled meeting with **FERREIRA.** Prior to the meeting, ICE agents performed an integrity search of  CI#2 and CI#2's vehicle. In addition, CI#2 was provided with the two green card style photos which was to be given to **FERREIRA** and used on the documents. CI#2 provided the fictitious names and dates of birth and recorded it on the back of each respective photo. Lastly, an electronic transmitter and recorder were placed on CI#2 to monitor and record the meeting

16.    At approximately 10:10 a.m., ICE agents observed CI#2 arrive in the Burlington Mall parking lot and park next to the

7

Sears Department store. CI#2 was escorted to the mall parking lot by ICE agents.

17.  At approximately 10:12 a.m., CI#2 received an incoming call from **FERREIRA**, who stated that he was present in the mall parking lot next to Pizzeria Uno. **FERREIRA** requested that CI#2 proceed to his location. **FERREIRA** also advised CI#2 that the documents would not be completed and ready for delivery today. CI#2 agreed, and proceeded via automobile to **FERREIRA** who was standing in front of Pizzeria Uno on the sidewalk of the mall entrance.

18.  At approximately 10:16 a.m., CI#2 arrived in front of the Pizzeria Uno and parked in the fire lane in front of the sidewalk (where **FERREIRA** was standing). According to CI#2, **FERREIRA** approached his/her vehicle and engaged in conversation. During the meeting, CI#2 provided **FERREIRA** with the two green card photos along with the fictitious names and dates of birth After a brief conversation, **FERREIRA** terminated the meeting and entered the mall entrance and proceeded out of view at approximately 10:18 a.m.

19.  Shortly after the meeting with **FERREIRA** ended, ICE agents met with CI#2. During debriefing, your affiant showed CI#2 a copy of the Massachusetts Driver"s License for Adailton F. **FERREIRA** (Massachusetts Driver License Number S96451916) to determine if **FERREIRA** was in fact "Marc". According to the

8

Registry of Motor Vehicles, **FERREIRA** is the registered owner of the blue Ford Explorer, bearing Massachusetts Registration 521 TA, which was driven by "Marc" on the September 18th meeting. According to CI#2, the male he/she knows as "Marc", and with whom CI#2 had met with to order the documents, is in fact **FERREIRA.**

20.   On October 16, 2003, at approximately 9:15 a.m., ICE agents met with CI#2 to prepare for the scheduled meeting with **FERREIRA** to accept delivery of the completed documents. Approximately ten minutes later, at approximately 9:22 a.m., CI#2 placed a consensually monitored and recorded call to **FERREIRA** at (857) 222-1709 to check on the status of the documents and to confirm a meet time and location. Based on the call, CI#2 confirmed that the documents were completed and arranged to meet **FERREIRA** at the Dunkin Donuts located on the Middlesex Turnpike in Burlington, Massachusetts in approximately 30-40 minutes.   The call was then terminated.

21.   During the briefing with CI#2, ICE agents performed an integrity search of CI#2 and CI#2's vehicle. In addition, CI#2 was provided with the $240.00 of official funds which was to be given to **FERREIRA** as the fee for the documents. Lastly, an electronic transmitter and recorder was placed on CI#2 to monitor and record the meeting.

9

22.  At approximately 9:43 a.m., CI#2 was observed arriving at the aforementioned Dunkin Donuts. CI#2 was escorted to the Dunkin Donuts by ICE agents.

23.  At approximately 9:51 a.m., **FERREIRA** was observed arriving in the Dunkin Donuts parking lot in the same blue Ford Explorer, and parking. **FERREIRA** exited his vehicle and proceeded on foot to CI#2's vehicle, remaining outside the driver's side window. According to CI#2, **FERREIRA** handed him/her the two sets of completed documents, which were contained in an empty Dunkin Donuts coffee cup. In exchange, CI#2 handed **FERREIRA** the $240.00 of official funds as the fee. After a brief verbal exchange, the meeting was then terminated at approximately 9:54am. Both **FERREIRA** and CI#2 departed in separate directions.

24.  Shortly after the meeting, ICE agents met with CI#2 for debriefing and to take custody of the documents. A further examination of the documents revealed that the photos, which appeared on the fraudulent green cards, were the same photos your affiant provided to CI#2 earlier. The names on the documents are as follows: Pedro D. GOMES and Jefferson C. EDUARDO.

**THIRD PURCHASE**

25.  On November 10, 2003, at approximately 3:12 p.m., ICE agents met a third confidential informant MIR# 02019 (hereinafter "CI#3") for the purpose of making a consensually monitored and recorded call to **FERREIRA** to purchase documents. CI#3 made

10

contact with **FERREIRA** at (857) 222-1709. However, when CI#3 asked

for FERREIRA's alias name of Marc, **FERREIRA** stated that his name

was "Rafael, and that there was no Marc present. Using a pretext,

CI#3 inquired if **FERREIRA** could assist him/her in obtaining two

sets of documents. According to CI#3, **FERREIRA** stated that he

could assist him/her, and quoted a price of $130.00 per set.

Based on the call a meeting was scheduled for 10:00 a.m. on

November 13th at the Café Belo restaurant located on New

Washington Street in Somerville, Massachusetts. The call was then

terminated.

26.  On November 13, 2003, at approximately 9:20 a.m., ICE

agents met with CI#3 in Somerville, MA to prepare for the

scheduled meeting with **FERREIRA.** During the briefing, ICE agents

performed an integrity search of CI#3 and CI#3's vehicle. In

addition, CI#3 was provided with the two green card style photos

along with the fictitious names and dates of birth (on each

respective photo). Lastly, an electronic transmitter and recorder

was placed on CI#3 to monitor and record the meeting.

27.  At approximately 9:47 a.m., CI#3 was observed by ICE

agents arriving at the Café Belo and parking in the lot. CI#3 was

escorted to the meet location by ICE agents. CI#3 remained in

his/her vehicle.

28.  At approximately 10:10 a.m., **FERREIRA** was observed

arriving in the blue Ford Explorer and parking next to CI#3's

11

vehicle. **FERREIRA** was observed briefly exiting his vehicle and
greeting CI#3. After a brief verbal exchange, both **FERREIRA** and
CI#3 entered **FERREIRA's** Explorer. According to CI#3, during the
meeting, he/she handed **FERREIRA** the two green card style photos
along with the names and dates of birth. **FERREIRA** advised CI#3
that the documents would be completed and ready for delivery
around 3:00 p.m. CI#3 agreed and terminated the meeting at
approximately 10:13 a.m. and exited **FERREIRA'S** vehicle. **FERREIRA**
then departed the area and proceeded out of view.

29. Shortly after the meeting, ICE agents met with CI#3 for
debriefing. During debriefing, your affiant showed CI#3 a copy of
the Massachusetts Driver's License for Adailton F. **FERREIRA** (MAL#
S96451916) to determine if **FERREIRA** was in fact Rafael".
According to CI#3, the male he/she knows as Rafael", and with
whom CI#3 had met with to order the documents, is in fact
**FERREIRA.**

30. At approximately 1:40 p.m., CI#3 received a call from
**FERREIRA,** who stated that the documents were completed and ready
for delivery. Based on the call, a meeting was scheduled for
3:00pm at the Café Belo in Somerville, MA. The call was then
terminated.

31. At approximately 1:50 p.m., ICE agents met with CI#3 to
prepare for the scheduled document delivery with **FERREIRA.** During

12

the briefing, ICE agents performed an integrity search of CI#3 and CI#3's vehicle. In addition, CI#3 was provided with the $260.00 of official funds as the fee for the documents. Lastly an electronic transmitter and recorder were placed on CI#3 to monitor and record the meeting.

32. At approximately 1:56 p.m., ICE agents observed **FERREIRA** parked in his Explorer in close proximity of the Café Belo parking lot.

33. At approximately 2:10 p.m., CI#3 was observed arriving at Café Belo. CI#3 was escorted to the meet location by ICE agents. However, at the same time, **FERREIRA** was observed departing Café Belo proceeding in his vehicle down New Washington Street (out of view). Several minutes later, CI#3 received an incoming call from **FERREIRA,** who instructed CI#3 to proceed down Washington Street to the Somerville "No Touch Car Wash" for the meeting. CI#3 agreed, and terminated the call.

34. At approximately 2:20 p.m., CI#3 was observed arriving at the Somerville "No Touch Car Wash". At approximately the same time, **FERREIRA** was observed at the car wash standing next to his Explorer (which was parked in a self-serve wash bay). CI#3 pulled his/her vehicle over to the sidewalk next to the car wash. **FERREIRA** proceeded on foot to CI#3"s vehicle and opened the passenger side door (crouching down). According to CI#3 **FERREIRA** provided him/her the two sets of completed documents. In

13

exchange, CI#3 handed **FERREIRA** the $260.00 as the fee for the documents. After a brief verbal exchange, CI#3 terminated the meeting at approximately 2:22pm and departed the area.

35.   Shortly after the meeting, ICE agents met with CI#3 for debriefing, and to take custody of the documents. A further examination of the documents revealed that the photos, which appeared on the fraudulent green cards, were the same photos your affiant provided to CI#3 earlier. The names on the documents are as follows: Alex Dias FLORES and Maria C. GOMES.

**FOURTH PURCHASE**

36.   On November 19, 2003, ICE agents met with CI#3 for the purpose of making a consensually monitored and recorded call to **FERREIRA** to order fraudulent documents. Using a pretext, CI#3 made contact with **FERREIRA** at (857) 222-1709 and ordered four sets of fraudulent documents. According to CI#3, **FERREIRA** agreed to accommodate CI#3"s request, and suggested the two meet immediately. CI#3 declined, and based on the call, a meeting was arranged for the morning of  November 20th in the Woburn, Massachusetts area. **FERREIRA** advised CI#3 that he would call in the morning to confirm an exact meet time and location. The call was then terminated.

37.   On November 20, 2003, at approximately 9:00 a.m., ICE agents met with CI#3 in Woburn, MA to prepare for the scheduled meeting. During the briefing, ICE agents performed an integrity

14

search of CI#3 and CI#3"s vehicle. In addition, CI#3 was provided with the four green card style photos along with fictitious names and dates of birth (written on each respective photo). Lastly, an electronic transmitter and recorder was placed on CI#3 to monitor and record the meeting.

38.  At approximately 9:19 a.m., CI#3 placed a consensually monitored and recorded call to **FERREIRA** to confirm the meet time and location. Based on the call, **FERREIRA** agreed to meet at approximately 10:00 a.m. in the Woburn Mall parking lot in Woburn, MA. The call was then terminated.

39.  At approximately 9:50 a.m., CI#3 was observed arriving in the Woburn Mall parking lot and parking. CI#3 was escorted to the meet location by ICE agents.

40.  At approximately 10:06 a.m., **FERREIRA** was observed arriving in the mall parking lot in a red Ford Pick Up, bearing Massachusetts Commercial Registration K18 608, along with another unknown Hispanic male passenger. **FERREIRA** parked in close proximity to CI#3's vehicle. CI#3 exited his/her vehicle and proceeded on foot to **FERREIRA**"s vehicle, remaining at the driver"s side door. According to CI#3, during the meeting, he/she handed **FERREIRA** the four green card style photos along with the names and dates of birth. **FERREIRA** stated that he was not sure if the documents would be completed today, and instructed CI#3 to

15

call him later around 12:00. CI#3 agreed, and terminated the
meeting at approximately 10:10 a.m.

41. At approximately 2:10 p.m., CI#3 received an incoming
call from **FERREIRA** who stated that the documents were complete
and ready for delivery. Based on the call, a meeting was arranged
for the Dunkin Donuts located on Market Street in Chelsea,
Massachusetts. The call was then terminated.

42. At approximately 2:35 p.m., ICE agents met with CI#3 to
prepare for the meeting with **FERREIRA** to accept delivery of the
documents. During the briefing, ICE agents performed an integrity
search of CI#3 and CI#3's vehicle. In addition, CI#3 was provided
with the $520.00 of official funds as the fee for the documents.
Lastly, an electronic transmitter and recorder were place on CI#3
to monitor and record the meeting.

43. While en route to the Dunkin Donuts, CI#3 received a
call from **FERREIRA,** who advised CI#3 that he/she was taking too
long, and changed the meet location from the Dunkin Donuts to the
Old Country Buffet ("OCB") at the Meadow Glen Mall in Medford,
Massachusetts. CI#3 agreed, and terminated the call.

44. At approximately 3:01 p.m., CI#3, along with ICE
agents, arrived at the Meadow Glen Mall and parked near the OCB.
CI#3 exited his/her vehicle and entered the OCB (surveilled by
ICE agents). Once inside the OCB, CI#3 met with **FERREIRA,** who was
accompanied by another unknown Hispanic male. During the meeting,

16

**FERREIRA** handed CI#3 the four completed sets of documents, which were contained in a newspaper. In exchange, CI#3 handed **FERREIRA** the $520.00 of official funds as the fee. After a brief verbal exchange, CI#3 terminated the meeting at approximately 3:07 p.m., and exited the OCB (returning to his/her vehicle).

45.    Shortly after the meeting, ICE agents met with CI#3 for debriefing, and to take custody of the documents. A further examination of the documents revealed that the photos, which appeared on the fraudulent green cards, were the same photos your affiant provided to CI#3 earlier. The names on the documents are as follows: Karla SANTOS, Ricardo DEMELO, Antonio CAMPOS, and Carlos TEIXEIRA.

### CONCLUSION

In sum, I have received a total of eighteen (18) documents from the above-mentioned undercover purchases. I have reviewed the documents and have determined that they are counterfeit identification documents. A review of records of the ICE and the Social Security Administration, reveals that the green card and SSANC numbers are either invalid, or belong to an individual other than the person listed on the documents.

Based on the foregoing information, I believe probable cause exists to conclude that Adailton F. **FERREIRA** a/k/a "Marc" a/k/a "Rafael", on September 18, 2003, October 16, 2003, November 13, 2003 and November 20, 2003, did knowingly, and without lawful

17

authority transfer false identification documents, in violation of Title 18, United States Code, Section 1028(a)(2).

Dana Fiandaca
Special Agent
United States Bureau of Immigration
and Customs Enforcement


Subscribed and sworn before me
this 22nd day of December, 2003.

JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE

18

JS 45 (5/97) - (Revised USAO MA 3/25/02)

**Criminal Case Cover Sheet**                                **U.S. District Court - District of Massachusetts**

**Place of Offense:**                    Category No. II_____        **Investigating Agency** ICE____ ____

City  Burlington_____        **Related Case Information:**

County  Middlesex_____       Superseding Ind./ Inf. _____    Case No. ____ ____
                                         Same Defendant _____    New Defendant _____ __
                                         Magistrate Judge Case Number _____ __
                                         Search Warrant Case Number _____ __
                                         R 20/R 40 from District of _____ __

**Defendant Information:**

Defendant Name  Adailton F. Ferreira_____        Juvenile  ☐ Yes    ☒ No

Alias Name  Marc a/k/a Rafael_____

Address  74 Blossomcrest, Lexington, MA_____

Birth date: _____  SS#: _____  Sex: M___  Race: White_____  Nationality: Brazilian

**Defense Counsel if known:** _____    **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA  Nadine Pellegrini_____        **Bar Number if applicable** _____

Interpreter:  ☒ Yes    ☐ No        **List language and/or dialect:**    **Portuguese**_____

Matter to be SEALED:    ☐ Yes    ☒ No

        ☒ Warrant Requested        ☐ Regular Process        ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____ ____
☐ Already in State Custody _____    ☐ Serving Sentence    ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**    ☒ Complaint    ☐ Information    ☐ Indictment

**Total # of Counts:**    ☐ Petty _____    ☐ Misdemeanor _____    ☒ Felony _____

**Continue on Page 2 for Entry of U.S.C. Citations**

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
     accurately set forth above.

**Date:** 12/22/03            **Signature of AUSA:** _____

JS 45  (5/97) - (Revised USAO MA 3/25/02)  Page 2 of 2 or Reverse

**District Court Case Number**  (To be filled in by deputy clerk): _____

**Name of Defendant** _____

U.S.C. Citations

| <u>Index Key/Code</u> | <u>Description of Offense Charged</u> | <u>Count</u> | <u>Numbers</u> |
|---|---|---|---|
| Set 1  <u>18 USC 1028</u> | <u>Fraudulent Identification Documents</u> | ___ | ___ |
| Set 2  _____ | _____ | ___ | ___ |
| Set 3  _____ | _____ | ___ | ___ |
| Set 4  _____ | _____ | ___ | ___ |
| Set 5  _____ | _____ | ___ | ___ |
| Set 6  _____ | _____ | ___ | ___ |
| Set 7  _____ | _____ | ___ | ___ |
| Set 8  _____ | _____ | ___ | ___ |
| Set 9  _____ | _____ | ___ | ___ |
| Set 10 _____ | _____ | ___ | ___ |
| Set 11 _____ | _____ | ___ | ___ |
| Set 12 _____ | _____ | ___ | ___ |
| Set 13 _____ | _____ | ___ | ___ |
| Set 14 _____ | _____ | ___ | ___ |
| Set 15 _____ | _____ | ___ | ___ |

**ADDITIONAL INFORMATION:** _____

_____

_____

_____

js-45.wpd - 3/13/02

*Arrest Warrant Issued*

AO 442 (Rev. 5/93) Warrant for Arrest

# United States District Court

### DISTRICT OF ___ MASSACHUSETTS

UNITED STATES OF AMERICA

V.

ADAILTON F. FERREIRA A/K/A
"MARC" A/K/A "RAFAEL"

# WARRANT FOR ARREST

CASE NUMBER: *MJ03- M-d67 TLA*

To:  The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ___ ADAILTON F. FERREIRA A/K/A "MARC" A/K/A "RAFAEL"
                                                                                    Name

and bring him ~~or her~~ forthwith to the nearest magistrate judge to answer a(n)

☐ Indictment  ☐ Information  ☒ Complaint  ☐ Order of court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him ~~or her~~ with (brief description of offense)

knowingly and without lawful authority transfer false identification documents

in violation of
Title ___ 18 ___ United States Code, Section(s) 1028 ___

Name of Issuing Officer

*[signature]* PO 0010                        Title of Issuing Officer
Signature of Issuing Officer                 12/22/03
                                             Date and Location

Bail fixed at $ _____ by _____
                                          Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

This form was electronically produced by Elite Federal Forms, Inc.